# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Aron Rosenzweig, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00227-JMV-MF |
| | ) | |
| | ) | Hon. John M. Vazquez |
| | ) | Return Date: July 18, 2016 |
| Transworld Systems Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Now comes Defendant Transworld Systems Inc. (TSI) by and through the undersigned counsel, submits the following Brief in Opposition to Plaintiff's Motion for Leave to Amend the Complaint.

i

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................... iii

I.  Introduction ............................................................................................................ 1

II. Procedural History and Background .................................................................... 2

III. Argument .............................................................................................................. 2

    A. Plaintiff has Not Diligently Pursued his Claims and has Caused Undue
    Delay by Seeking Leave to Amend at this Stage of the Proceedings ..................... 3

    B. Plaintiff's Motion for Leave to Amend is Futile and Seeks to
    Add Claims that are Legally Insufficient ................................................................ 4

        1. Plaintiff's FDCPA Claim is Futile Because the Toll Violation
        Referenced in TSI's letter is Not a Consumer Debt Under the Act ............. 4

        2. Plaintiff's Proposed New Jersey Consumer Fraud Act
        Claim is Futile Because his Claim does not Concern the
        Sale of Merchandise or Real Estate ............................................................. 8

        3. Plaintiff's Proposed Amended Complaint Fails to
        State a Claim for Violations of the New Jersey Truth
        in Consumer  Contract, Warranty and Notice Act
        and the Proposed Amendment  Would Be Futile ...................................... 10

IV. Conclusion ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Rules**

*Fed. R. Civ. P. 15.* ............................................................................................................ 2

*Fed. R. Civ. P. 12.* ............................................................................................................ 3

**Statutes**

*15 U.S.C. § 1692* ................................................................................................... 1, 5, 6, 7

*N.J. Stat. Ann. § 56:12–15* ............................................................................... 1, 11, 12

*N.J. Stat. Ann. § 56:8-2* ............................................................................................. 1, 8

*N.J. Stat. Ann. § 56:8–1(c)* ............................................................................................ 8

*N.Y. Comp. Codes R. & Regs. tit. 21, §§ 1020.7, 1021.3 and 1023.7* ............................... 7

**Cases**

*Bass v. Stolper, Koritzinsky, Brewster & Neider*, S.C., 111 F.3d 1322 (7th Cir.1997) ..... 6

*Barrows v. Chase Manhattan Mortgage Corp.*, 465 F.Supp.2d 347 (D.N.J. 2006) ........ 12

*Boyko v. Am. Int'l Grp., Inc.,* 2009 WL 5194431, (D.N.J. Dec. 23, 2009) .... 10, 12, 13, 14

*Del Tufo v. Nat'l Republican Senatorial Comm.*,
248 N.J.Super. 684, 591 A.2d 1040 (Ch.Div.1991) .......................................................... 9

*Fenwick v. Kay Am. Jeep, Inc.,* 136 N.J.Super. 114 (App.Div.) ........................................ 8

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ....................................................................... 2

*Franklin v. Parking Revenue Recovery Servs., Inc.*,
2014 WL 6685472 (N.D. Ill. Nov. 25, 2014) ............................................................... 6, 7

*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003)............................ 3

*Graham v. ACS State & Local Solutions, Inc.*,
2006 WL 2911780, (D.Minn. Oct.10, 2006) .................................................................... 5

*Gulley v. Markoff v. Krasny*, 664 F.3d 1073 (7th Cir.2011) .............................................. 5

*Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463 (D.N.J. 1990) ............. 3, 4

*Hicken v. Arnold, Anderson & Dove, P.L.L.P.*, 137 F.Supp.2d 1141 (D.Minn.2001) ...... 5

*Huertas v. Galaxy Asset Mgmt*, 641 F.3d 28 (3d Cir. 2011) ............................................. 8

*Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719 (D.N.J. 2008) ......................... 9

*Ogbin v. GE Money Bank*, 2011 WL 2436651 (D.N.J. June 13, 2011) ................. 12, 13, 14

*Reid v. Am. Traffic Solutions, Inc.*, 2010 WL 5289108 (S.D.Ill.Dec. 20, 2010) ............... 5

*Sarver v. Capital Recovery Associates, Inc.*, 951 F.Supp. 550 (E.D.Pa.1996) ................. 5

*Scibek v. Longette*, 339, N.J.Super. 72 (App. Div. 2001) ................................................... 3

*Shannon v. ACS State and Local Solutions, Inc.*, 2008 WL 2277814 (D.Minn. 2008) ..... 5

*Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ............................................................ 3

*Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238 (3d Cir. 2010) ........................... 3

*Yazo v. Law Enforcement Systems, Inc.*, 2008 WL 4852965, (C.D.Cal. 2008) ................. 6

*Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163 (3d Cir.1987) ...................................... 5

**I.     Introduction**

This entire lawsuit arises from plaintiff's failure to pay the required toll when he drove his vehicle across the Henry Hudson Bridge.  Plaintiff's continued failure to pay the toll and accompanying violation fees, even after receiving numerous collection notices from the tollway authority, led to the placement of the account with Transworld Systems Inc. ("TSI").  TSI then sent plaintiff a letter regarding the toll violation. Instead of paying the amount reflected on the letter (or even disputing the violation), plaintiff chose to file a federal lawsuit against TSI.

On January 13, 2016, plaintiff filed a putative class action lawsuit alleging that a single letter TSI sent to him regarding the toll violation contained language that he claims violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.  Dkt. 1.  Now, many months later, plaintiff seeks leave to amend his complaint to add additional claims arising under two New Jersey statutes: the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("NJCFA"), and the Truth in Consumer Contract Warranty and Notice Act, ("TCCWNA") N.J.S.A. 56:12-15.

This Honorable Court should deny plaintiff's request for at least two reasons.  First, plaintiff has failed to show a good faith basis for his delay in seeking leave to amend the complaint until now; and, second, plaintiff's proposed amended complaint will be futile because he has failed to state, and cannot state under any circumstances, a valid cause of action under the FDCPA, NJCFA or TCCWNA.

**II.    Procedural History**

On January 13, 2016, plaintiff filed his single count complaint alleging a violation of the FDCPA. *Dkt. 1*. The parties thereafter exchanged written discovery and attended status and scheduling conferences with the Magistrate Judge. On May 20, 2016, TSI requested a pre-motion conference to allow TSI to move for judgement on the pleadings for plaintiff's failure to state a claim under the FDCPA. *Dkt. 13*. As stated in TSI's request for a pre-motion conference, TSI has a good faith basis for such a motion and believes the motion may dispose of this action in its entirety at this stage without the need for further litigation because the underlying toll obligation is not a consumer debt under the FDCPA. *Id.* It was only after TSI's request for the pre-motion conference was submitted, and plaintiff was faced with the dismissal of his lawsuit, that plaintiff sought leave to amend his complaint to add the two additional claims. Plaintiff's motion should be denied because the two proposed additional claims are, like the FDCPA claim, without merit and amending the complaint at this stage with such futile claims is pointless.

**III.   Argument**

A party may file an amended complaint once as a matter of course within 21 days of service of the original complaint. Fed. R. Civ. P. 15(a)(1). Once the 21 days has elapsed, a party must seek leave from the Court or consent of the opposing party. *Id*. at 15(a)(2). The Court, however, may reject a Rule 15(a)(2) motion when the amendment sought: (1) causes undue delay; (2) arises from bad faith or dilatory motive on the part of the movant; (3) arises from repeated failure to cure deficiencies by amendments previously allowed; (4) causes undue prejudice to the opposing party by virtue of allowance of the amendment;

or (5) is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). An amendment is futile when "the complaint, as amended, fails to state a claim upon which relief could be granted[,]" i.e., when it fails under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010); *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

### A. Plaintiff has Not Diligently Pursued his Claims and has Caused Undue Delay by Seeking Leave to Amend at this Stage of the Proceedings

Plaintiff filed his original complaint in January but waited until he was faced with the prospect of a dispositive motion on his sole claim prior to seeking leave to amend. Plaintiff asserts that he did not move to amend his complaint earlier because "he had expected the case to proceed through discovery resolving outstanding issues of fact." *Dkt. 18-1, p. 6-7*. Plaintiff claims that the facts he "sought included dates which Rosenzweig allegedly failed to pay the tolls, and what his status/relationship with EZ Pass was at the time." *Dkt. 18-1, p. 7*. This explanation makes no sense considering that plaintiff's entire claim is based upon on a single letter that plaintiff asserts contains improper language. Moreover, plaintiff does not now claim that he uncovered any of these purported "facts" during discovery or at any time after the filing of his original complaint. He also fails to explain how or why any of these facts would be relevant to either his new or old claims, or how plaintiff himself was not already aware of his status and relationship was with EZ Pass. Presumably, plaintiff believed he had a sufficient factual basis to assert the claims he made in his original complaint and his factual contentions had evidentiary support.

3

Nevertheless, he fails to provide any newly discovered facts that somehow have given rise to the new state law claims he now seeks to assert.

Plaintiff has failed to show that he diligently pursued these claims and has failed explain his delay in seeking leave to amend his complaint. As such, plaintiff's request for leave to amend the complaint should be denied.

**B.     Plaintiff's Motion for Leave to Amend is Futile and Seeks to Add Claims that are Legally Insufficient**

Timeliness is not the only defect in plaintiff's motion; the Court should also deny plaintiff's motion for leave to amend because the newly asserted claims are futile. If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co.*, 133 F.R.D. 463, 468. This Court should exercise its discretion and deny plaintiff leave to amend his complaint because the proposed amended complaint asserts three causes of action that are each legally insufficient on their face.

**1.     Plaintiff's FDCPA Claim is Futile Because the Toll Violation Referenced in TSI's letter is Not a Consumer Debt Under the Act**

Plaintiff acknowledges that the obligation that is the subject of his lawsuit arose from a bill he owed to MTA Bridges and Tunnels E-ZPass. *Dkt. 1, ¶ 8*. In his proposed amended complaint, plaintiff again acknowledges that the financial obligation "arose from a bill owed to MTA Bridges and Tunnels EZ-Pass." *Dkt. 18-3, ¶ 9*. Plaintiff's own allegations establish that the financial obligation that forms the basis of his entire lawsuit is a toll violation. Unfortunately for plaintiff, the FDCPA does not apply to toll violations.

4

As a threshold matter, there must be a "debt" for the FDCPA to be applicable. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir.1987). The FDCPA defines "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5)

If the financial transaction at issue does not constitute a "debt" under the FDCPA, then plaintiff has no cognizable federal claim. *Sarver v. Capital Recovery Associates, Inc.*, 951 F.Supp. 550, 552 (E.D.Pa.1996). Non-consensual obligations are not debts within the meaning of the statute. *See e.g. Gulley v. Markoff v. Krasny*, 664 F.3d 1073, 1075 (7th Cir.2011) ("a fine does not stem from a consensual transaction and thus is not a debt under the FDCPA"); *Reid v. Am. Traffic Solutions, Inc.*, 2010 WL 5289108, *4–5 (S.D.Ill.Dec. 20, 2010) (concluding that "traffic fines" are not debts under the FDCPA); *Graham v. ACS State & Local Solutions, Inc.*, 2006 WL 2911780, at *2 (D.Minn. Oct.10, 2006) ("[T]he Court fails to see how the receipt of a parking ticket, which is a legally imposed fine for parking one's vehicle in an unauthorized location, can constitute a consumer transaction."); *Shannon v. ACS State and Local Solutions, Inc.*, 2008 WL 2277814, 1 (D.Minn. 2008)("a 'debt,' for the purposes of the FDCPA, arises only in the context of a 'business dealing or other consensual consumer transaction.' … County-levied fines and restitution meet none of the criteria of a FDCPA 'debt,' as defined.")(quoting *Hicken v. Arnold, Anderson & Dove, P.L.L.P.*, 137 F.Supp.2d 1141, 1143 (D.Minn.2001)).

The transaction at issue in the case at bar, and the obligation referenced in TSI's letter, was a toll violation, which is not a "debt" within the meaning of the FDCPA. As at least one other federal court has held, the failure to pay tolls is tantamount to theft and does not amount to a "debt" within the meaning of 15 U.S.C. § 1692a(5). *Yazo v. Law Enforcement Systems, Inc.*, 2008 WL 4852965, *2-3 (C.D.Cal. 2008). The court said:

> As a general matter, a toll charge, the charge for the use of the toll road, is a charge for services. A driver incurs the toll charge upon making his choice to utilize the toll road. But a consensual transaction does not exist in all instances where a driver uses a toll road. Rather, when a driver fails to pay the toll charge, the use of the toll road is akin to theft.

*Id*., at *3.

The *Yazo* Court went on to say that "[a]lthough a thief undoubtedly has an obligation to pay for the goods and services he steals," it is an obligation outside of the scope of the FDCPA. *Id.* (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider*, S.C., 111 F.3d 1322, 1326 (7th Cir.1997).

Plaintiff's vague assertion in his proposed amended complaint that he occasionally passed through toll plazas and the scanning machinery failed to properly scan his transponder is irrelevant. *See, Dkt.18-3, ¶ 14*. A similar argument was considered and rejected by the Court in *Franklin v. Parking Revenue Recovery Servs., Inc.*, 2014 WL 6685472 (N.D. Ill. Nov. 25, 2014). In *Franklin*, the plaintiff's putative FDCPA claim arose from a letter seeking to collect an unpaid parking fee that plaintiff maintained she actually paid. The Court found it irrelevant whether the parking fee was paid or not and provided the following example:

> Returning to the parking meter example, consider a parker who in fact does feed the parking meter, but nevertheless receives a parking ticket that is mistakenly handed out by an officer. The fact that the parker paid the meter does not transform the fine into a debt. The nature of the transaction is the same. The municipality is still penalizing the parker for what is essentially theft of services; the parking enforcement officer was simply mistaken in assessing the fine. This does not mean that the parker cannot challenge the imposition of the fine, just that he may not invoke the FDCPA when the government tries to collect on a parking fine. Thus, regardless of the merits of the dispute over the underlying transaction, the amount charged by Parking Revenue is still a fine.

*Franklin,* 2014 WL 6685472, at *5

This is precisely the situation at issue in this case. Regardless of plaintiff's amended complaint asserting that he may have had an E-ZPass transponder that was not properly scanned while going through certain toll booths, the underlying financial obligation remains a toll violation fine and <u>not</u> a consumer debt under the FDCPA. The creditor, MTA Bridges and Tunnels E-ZPass, is penalizing plaintiff for going through the toll booth without paying the toll. Whether MTA was mistaken in assessing the toll violation is wholly irrelevant. Plaintiff has other avenues to challenge the assessed toll violation, but he has no recourse under the FDCPA.

Driving on a toll bridge without payment of the toll, or the resultant fines, fees or costs charged by the tolling authority cannot amount to a consensual consumer transaction and is, in fact, a violation New York State Law. *See, N.Y. Comp. Codes R. & Regs. tit. 21, §§ 1020.7, 1021.3 and 1023.7.* The toll violation that is the subject of TSI's letter is not a "debt" within the meaning of 15 U.S.C. § 1692a(5), and thus, not subject to the FDCPA. Because any claim asserted under the FDCPA would be futile, plaintiff's motion for leave to amend his complaint should be denied.

### 2. Plaintiff's Proposed New Jersey Consumer Fraud Act Claim is Futile Because His Claim Does Not Concern the Sale of Merchandise or Real Estate

There is also no basis for a plaintiff's Consumer Fraud Act (CFA) claim against TSI. The CFA is concerned with the sale or advertisement of merchandise or real estate. TSI is not alleged to have engaged in the sale or advertisement of merchandise or real estate (and could not have been) and thus plaintiff's proposed CFA claim is futile. The Consumer Fraud Act provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, <u>in connection with the sale or advertisement of any merchandise or real estate</u>, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

N.J.S.A. 56:8-2 (Emphasis added).

The CFA further defines "merchandise" to include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8–1(c). "The Consumer Fraud Act was enacted to 'protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services.'" *Scibek v. Longette*, 339, N.J.Super. 72, 77 (App. Div. 2001) (citing *Fenwick v. Kay Am. Jeep, Inc.,* 136 N.J.Super. 114, 117 (App.Div.), *reversed*

*on other grounds*, 72 N.J. 372 (1977); *Del Tufo v. Nat'l Republican Senatorial Comm.*, 248 N.J.Super. 684, 591 A.2d 1040, 1042 (Ch.Div.1991) ("[T]he reach of the [NJCFA] is intended to encompass only consumer oriented commercial transactions involving the marketing and sale of merchandise or services."); *Huertas v. Galaxy Asset Mgmt*, 641 F.3d 28, 35 (3d Cir. 2011)( "Huertas has failed to state a claim under the NJCFA because his complaint is not based on [defendant's] marketing or sale of merchandise or services to him.").

It is irrefutable the CFA does not apply under the facts here. TSI is alleged to be a debt collector under the FDCPA and is alleged to have undertaken action related to collection of a debt. *See Dkt.18-3, ¶ 6.* There is no allegation of conduct "in connection with the sale or advertisement of any merchandise or real estate," nor could there be because the CFA does not apply to debt collectors.

To state a claim for violation of the CFA, a plaintiff must allege facts that establish that the alleged fraudulent conduct induced or lured the plaintiff into purchasing merchandise or real estate. *Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 724 (D.N.J. 2008). Plaintiff alleges that TSI's letter to him violated the law but nowhere in the proposed amended complaint does plaintiff assert that TSI acted in a manner that fraudulently induced him into purchasing merchandise or real estate. In *Joe Hand,* the plaintiff, which owned rights to a "pay-per-view" event filed suit alleging defendant had shown the pay-per-view" event to its patrons without obtaining its consent*. Id.* at 721. Defendant counterclaimed. The basis for defendant's counterclaim was a letter it had received from plaintiff's attorney which allegedly threatened a federal lawsuit in an

9

attempt to obtain money that plaintiff knew it was not lawfully entitled to receive. *Id.* at 722. In dismissing the counterclaim, the district court concluded:

> … to state a claim within the scope of the CFA, a plaintiff must allege facts that establish that the alleged fraudulent conduct induced or lured the plaintiff into purchasing merchandise or real estate. The allegations of the counterclaim fall short of this standard and therefore the CFA claim must be dismissed.

*Id. at 724*

Likewise, in *Boyko v. Am. Int'l Grp., Inc.,* 2009 WL 5194431, (D.N.J. Dec. 23, 2009), a complaint alleging a debt collector, "CCS", violated the CFA was dismissed for the same reasons. Judge Kugler wrote:

> Plaintiff's CFA claim must fail because CCS did not sell any merchandise or real estate to him. The alleged violation here occurred when CCS called and sent notices to Plaintiff regarding a debt that he purportedly does not owe. However, CCS's notices were not offers to sell—and Plaintiff did not buy—anything. CCS was not selling insurance, (which is merchandise under New Jersey law, *see Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 150 N.J. 255, 696 A.2d 546, 551 (N.J.1997)), and CCS was most certainly not selling debt. Its mere debt collection efforts on behalf of a third party who might have sold merchandise is not itself a sale of merchandise. *See Hoffman v. Encore Capital Group, Inc.,* No. A–3008–07T1, 2008 WL 5245306, at *3 (N.J.Super.Ct.App.Div. Dec.18, 2008) (holding collection activities did not involve sale of merchandise to consumers), *certif. denied,* 198 N.J. 316, 966 A.2d 1080 (N.J.2009)

*Boyko v. Am. Int'l Grp., Inc.*, 2009 WL 5194431, at *4

Plaintiff's attempt to assert a CFA claim arising out of TSI's letter seeking to collect the toll violation will fail and is an exercise in futility. Accordingly, the motion for leave to amend should be denied.

  **3. Plaintiff's Proposed Amended Complaint Fails to State a Claim for Violations of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, and the Proposed Amendment Would Be Futile**

10

In his final proposed claim against TSI, plaintiff asserts that the language at issue in the TSI's letter violated the New Jersey TCCWNA in that it "contains false threats that violate the FDCPA and the NJCFA." *Dkt. 18-3, ¶85*. However, plaintiff fails to adequately plead the most basic elements of a TCCWNA claim – that TSI entered into a written contract with him, that TSI is a "seller, lessor, creditor lender or bailee," or that plaintiff is a "consumer" under the TCCWNA in relation to TSI. In his own proposed complaint, plaintiff specifically alleges that TSI is a debt collector seeking to collect a debt owed to MTA Bridges and Tunnels E-ZPass; yet, without any factual basis to support it, he pleads in wholly conclusory fashion that TSI is also the creditor and a bailee. (*Compare Dkt. 18-3, ¶7 with Dkt. 18-3 ¶ 82-83)*. This proposed TCCWNA claim fails as a matter of law, and this Court should deny plaintiff leave to amend the complaint to add this claim.

The TCCWNA provides:

> No *seller, lessor, creditor, lender or bailee* shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a *seller, lessor, creditor, lender or bailee* as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. *Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes….*

N.J. Stat. Ann. § 56:12–15 (emphasis added).

There can be no dispute that TSI did not enter into any written contract with plaintiff, that TSI did not give or display any written consumer warranty, notice or sign to him, and that TSI did not violate a provision in any warranty, notice or contract. To the extent that

11

plaintiff attempts to argue to the contrary, it is wholly unsupported by the exhibit attached to the complaint[1], and the allegations asserting that TSI is a debt collector.

The question, then, is whether TSI can possibly be deemed to be a "seller, lessor, creditor, lender or bailee" under the TCCWNA, and whether plaintiff can possibly be deemed to be a "consumer" under the TCCWNA in relation to TSI. The answer is clearly no.

The TCCWNA, amongst other provisions, "prohibits a seller, lessor, lender, or bailee from giving a written notice [or sign] to a consumer that includes a provision that violates state or federal law." *Boyko v. American Intern. Group, Inc.*, 2009 WL 5194431 (D.N.J. Dec. 23, 2009) (citing N.J.S.A. § 56:12-15). The TCCWNA "protects consumers by requiring that consumer contracts be clearly written and understandable." *Ogbin v. GE Money Bank*, 2011 WL 2436651 (D.N.J. June 13, 2011) (citing *Barrows v. Chase Manhattan Mortgage Corp.*, 465 F.Supp.2d 347, 362 (D.N.J. 2006). The terms "seller, lessor, [creditor], lender, or bailee" are not defined by statute, and "to define those terms, a reviewing court must rely on the plain language of the statute and give the language its ordinary meaning." *Id.* (citing *Barrows*, 465 F.Supp.2d at 362). As asserted by the court in *Ogbin*, based upon substantially similar allegations of liability under the TCCWNA against debt collector Portfolio Recovery Associates, LLC:

> Plaintiffs do not allege that PRA is a 'seller, lessor, lender, or bailee' of their debt. They also do not claim that they bought, leased, borrowed, or bailed any money, property, or service which is primarily for personal, family, or

---

[1] While plaintiff failed to attach the collection letter sent from TSI to his proposed First Amended Complaint as an exhibit, it is referenced by plaintiff in the proposed First Amended Complaint (*see* ¶ 15), and was attached to the original complaint. *See* Dkt. 1. The TSI letter clearly and unequivocally provides that TSI is acting as a debt collector seeking to collect a debt owed to MTA Bridges and Tunnels E-ZPass. *Id.*

> household purposes from PRA. As pleaded by plaintiffs, PRA acted as a debt collector to collect on a debt that plaintiffs incurred through the other defendants. Thus, plaintiffs' TCCWNA claim against PRA fails. *See Boyko*, 2009 WL 5194431, at *5 (dismissing TCCWNA claim because plaintiff did not allege that the defendant was a seller, lessor, lender, or bailee and because the defendant did not sell, lease, lend or bail any money or property to the plaintiff).

2011 WL 2436651, at *4.

In *Ogbin*, the plaintiffs alleged in their complaint that Portfolio Recovery Associates, LLC was a debt collector, and that it violated the TCCWNA and the New Jersey Consumer Fraud Act. *Id.* at *1. Here, like in *Ogbin*, plaintiff alleges that TSI is a debt collector. However, he also alleges in a conclusory fashion without any support that TSI is both a "creditor" and "bailee." Plaintiff's blind allegations that TSI is a creditor and bailee should not be entertained. The collection letter sent by TSI clearly and unequivocally provides that TSI was collecting the toll violation plaintiff owed to MTA Bridges and Tunnels E-ZPass. As such, plaintiff cannot plead, under any circumstances, that TSI is a "seller, lessor, creditor, or lender" of plaintiff's obligation.

In *Boyko v. American Intern. Group, Inc.*, *supra*, the plaintiff purchased an automobile insurance policy from American International Insurance Company, and was later sent a collection letter by defendant CCS seeking to collect the debt. Plaintiff paid the full amount under protest and then filed a complaint against the defendants alleging violations of the FDCPA, the New Jersey Consumer Fraud Act, and the TCCWNA. The *Boyko* court found that the TCCWNA did not apply to CCS, as a debt collector, or as an alleged agent of a covered entity, because plaintiff did not allege, nor could he, that CCS was a seller, lessor, lender of bailee as to him. The court said:

13

> Plaintiff does not assert in the Amended Complaint nor in the opposition brief that CCS is a seller, lessor, lender, or bailee. Indeed, were Plaintiff to make such an argument, that assertion would fail since CCS did not sell, lease, lend or bail any money or property to Plaintiff… Under the plain language of the statute, liability does not extend to agents of the covered entities. Thus, assuming that Plaintiff has alleged sufficient facts to support a principal-agent relationship, CCS cannot be liable under the TCCWNA for its acts on behalf of the other Defendants where CCS's acts did not involve selling, leasing, lending, or bailing.

*Id.* at *5(internal citations omitted)

Plaintiff's wholly unsupported assertions that TSI is a bailee, and that somehow he is a bailor, must be disregarded. Additionally, as made clear in *Boyko* and *Ogbin*, plaintiff is not a consumer, under the TCCWNA, as it relates to TSI, and, as asserted in more depth above in section III.B.1, TSI disputes that the debt is a consumer debt at all. TSI did not sell, lease, lend or bail any money or property to plaintiff. *See Boyko*, 2009 WL 5194431, at *5; *Ogbin*, 2011 WL 2436651 (holding that the TCCWNA did not apply because plaintiff did not allege that they "bought, leased, borrowed, or bailed any money, property, or service which is primarily for personal, family, or household purposes from PRA"). Here, plaintiff does not allege, nor can he, that he "bought, leased, borrowed, or bailed any money, property, or services which is primarily for personal, family, or household purposes" from TSI. On that basis, plaintiff cannot plead he is a consumer under the TCCWNA as to TSI.

Based upon clear authority from this court, any attempt to plead a claim under the TCCWNA, as it relates to TSI, fails as a matter of law, and any amendment asserting such a claim would be futile. *See Boyko*, 2009 WL 5194431, at *6 (denying leave to amend TCCWNA claim where leave to amend would be futile based upon fact that "under no set

14

of facts will Plaintiff be able to allege that CCS was a 'seller, lessor, lender, or bailee"). As such, this Court should deny plaintiff's motion for leave to amend the complaint to assert a claim under the TCCWNA.

### IV. Conclusion

WHEREFORE, TSI prays that this Honorable Court deny plaintiff's motion for leave to file an amended complaint.

Respectfully Submitted,

*/s/ Aaron Easley*
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3 Cross Creek Drive
Flemington, NJ 08822-4938
Telephone: 908.237.1660
E-mail: aeasley@sessions.legal

*Attorney for Defendant,*
*Transworld Systems, Inc.*

15

## CERTIFICATE OF SERVICE

      I hereby certify that on July 7, 2016, a true and correct copy of **DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      */s/ Aaron Easley*
      SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
      3 Cross Creek Drive
      Flemington, NJ 08822-4938
      Telephone: 908.237.1660
      E-mail: aeasley@sessions.legal

      *Attorney for Defendant,*
      *Transworld Systems, Inc.*