IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ARON ROSENZWEIG, on behalf of himself ) Case No.: 2:16-cv-00227-JMV-MF
and all other similarly situated consumers )
                                          )
                Plaintiff,                )
                                          )
        vs.                               )
                                          ) ORAL ARGUMENT REQUESTED
                                          )
TRANSWORLD SYSTEMS INC.                   )
                                          )
                Defendant.                )
                                          )
                                          )
_____)

_____

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
_____

**On the Brief:**

Daniel Zemel, Esq.
**Zemel Law, LLC**
70 Clinton Ave. Suite 3
Newark, New Jersey 07114
(T) 862-227-3106
dz@zemellawllc.com
Attorneys for Plaintiff


Fred M. Zemel, Esq.
**The Zemel Law Firm, P.C.**
70 Clinton Ave.
Newark, New Jersey 07114
(T) 973-622-5297
Thezemellawfirm@optimum.net
Attorneys for Plaintiff

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.    E-ZPASS TRANSACTIONS ARE "DEBTS" UNDER THE FDCPA................................. 2

    a.   Because Utilizing an E-ZPass Transponder to Pay a Toll Constitutes a "Pro Tanto"

Exchange and is Contractual in Nature, Rosenzweig's Debt is a "Debt" Under the FDCPA .... 2

        i.    E-ZPass Transactions Constitute "Pro Tanto" Exchanges for Passage ....................... 4

        ii.   E-ZPass Transactions Arise From Consumer Contracts................................................ 5

    b.   The FDCPA Does Not Contain the Fraud Exception Sought By Defendant ..................... 7

II.   THE TCCWNA DIRECTLY APPLIES TO DEFENDANT'S ILLEGAL COLLECTION

CONDUCT ........................................................................................................... 12

CONCLUSION ...................................................................................................... 14

## Table of Authorities

**Cases**

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011)......................................... 2

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir. 1997) ......... 3, 4, 7

*Boyko v. American Intern. Group, Inc.*, 2009 WL 5194431  (D.N.J. Dec. 23, 2009) .................. 13

*Brown v. Card Serv. Ctr.,* 464 F.3d 450 (3d Cir. 2006) ................................................................ 2

*Brown v. Transurban USA. Inc*., 2015 U.S. Dist. LEXIS 148489 (E.D. Va. Nov. 2, 2015) .......... 7

*DeHart v. US Bank, N.A. ND*, 811 F. Supp. 2d 1038 (D.N.J. 2011) ............................................ 12

*FTC v. Check Investors, Inc*., 502 F.3d 159, (3d Cir. 2007)............................................... 3, 4, 7, 8

*Hansen v. Ticket Track, Inc*., 280 F Supp. 1196 (W.D.Wash., 2003) .................................... 10, 11

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) .......................................... 3

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ............................................................................. 8

*Ogbin v. GE Money Bank*, 2011 WL 2436651 (D.N.J. June 13, 2011)......................................... 14

*Piper v. Portnoff Law Assocs*., 274 F. Supp. 2d 681 (E.D. Pa. 2003) ........................................... 3

*Pollice v. National Tax Funding, L.P*., 225 F.3d 379 (3d Cir. 2000) ...................................... 3, 10

*Rickenbach v. Wells Fargo Bank, N.A.,* 635 F. Supp. 2d 389 (D.N.J. 2009) .............................. 12

*Sarver v. Capital Recovery Associates, Inc.*, 951 F. Supp. 550 (E.D.Pa.1996)............................ 2

*Sgro v. Getty Petroleum Corp.*, 854 F. Supp. 1164  (D.N.J. 1994) ............................................. 13

*Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980) ............................................................................. 3

*Yazo v. Law Enforcement Sys.*, 2008 U.S. Dist. LEXIS 93345 (C.D. Cal. Nov. 7, 2008)............. 9

*Zucker v. Kenworthy Bros.*, 130 N.J.L. 385 (1943) .................................................................... 13

**Statutes**

15 USCS § 1692..................................................................................................... 2, 12

N.J.S.A. § 56:12-15................................................................................................. 12

## PRELIMINARY STATEMENT

Plaintiff ("Rosenzweig") filed the instant complaint after receiving a collection letter from Transworld Systems Inc. ("Defendant") which falsely presented that interest and other charges may accrue in the event the debt is not paid imminently. In response, Defendant argues that it is allowed to deceive consumers like Rosenzweig because the debt, stemming from an unpaid toll, is not within the definition of a "debt" under the Fair Debt Collection Practices Act ("FDCPA" or "Act"), and therefore exempt from the protections the Act provides consumers from unscrupulous collection activity.

To be considered a "debt," a payment obligation must arise through an exchange of goods or services or through an underlying consumer contract. It is undisputed that while a consumer passes through a toll he becomes obligated to make payment in exchange for said passage, according to the rate set forth. Thus, a toll obligation is a "debt" as that term is defined by the FDCPA. Further, that Rosenzweig's debt arose out of the use of an E-ZPass transponder evidences the contractual nature of the debt. In fact, E-ZPass only provides transponders to those consumers that agree to the terms and conditions within the consumer contract it provides at the time the consumer opens an E-ZPass credit account. Given that a consumer's failure to pay an E-ZPass bill is essentially a breach of contract, it is undisputed that the debt arises out of a consumer contract, and is therefore a "debt" within the meaning of the FDCPA.

1

## <u>ARGUMENT</u>

I.   E-ZPASS TRANSACTIONS ARE "DEBTS" UNDER THE FDCPA

Congress made its purpose in enacting the FDCPA explicit: "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *15 U.S.C. § 1692(e)*. In furthering this objective, the Act prohibits the use of false and deceptive conduct in attempt to collect consumer debts. *Id*. Being a remedial statute, courts construe the FDCPA's language broadly so as to effect its purpose. *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011); *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 453 (3d Cir. 2006).

a.   Because Utilizing an E-ZPass Transponder to Pay a Toll Constitutes a "Pro Tanto" Exchange and is Contractual in Nature, Rosenzweig's Debt is a "Debt" Under the FDCPA

In order for a debt collector to be subject to liability under the FDCPA, the underlying debt in question must fall within the FDCPA's definition of a "debt." *Sarver v. Capital Recovery Associates, Inc.*, 951 F. Supp. 550, 552 (E.D.Pa.1996). The FDCPA defines a "debt" as:

"any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

*15 U.S.C. § 1692a(5).*

2

Congress did not expressly define the term "transaction." However, the majority of federal courts that have interpreted this provision have required the "transaction" to be consensual. *FTC v. Check Investors, Inc*., 502 F.3d 159, 169, (3d Cir. 2007); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). A consensual transaction occurs where the parties negotiate or contract for consumer-related goods or services. *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980); *Piper v. Portnoff Law Assocs*., 274 F. Supp. 2d 681, 687 (E.D. Pa. 2003); *Bass*, 111 F.3d at 1323.

New Jersey courts have not adjudicated whether an E-ZPass debt falls within the definition of "debt" under the FDCPA; therefore a review of analogous cases are instructive. In *Pollice v. National Tax Funding, L.P*., 225 F.3d 379 (3d Cir. 2000), the Third Circuit addressed whether the FDCPA's definition of "debt" applied to property taxes and water/sewer bills. There, the Court held that property tax obligations do not arise out of a "pro tanto exchange," an exchange of value for a good or service, because the consumer does not receive anything directly in return for a tax payment. Thus, the Court held that taxes are not considered "debts" under the FDCPA. *Id*. at 401. Conversely, the Court found water and sewer bills within the FDCPA's definition of "debts" because "homeowners ('consumers' of water and sewer services) had an 'obligation . . . to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services. . . primarily for personal, family, or household purposes.'" *Id.* at 400. In other words, the *Pollice* court distinguished between a tax wherein the consumer receives nothing in exchange for payment thereof, and a water/sewer bill which arises directly out of an exchange for water or sewer services—an exchange directly tied to usage of said utility. *Id.*

3

In *FTC*, the Third Circuit addressed whether the tendering of a check with insufficient funds was a "debt" under the FDCPA. Relying heavily on *Bass*, a Seventh Circuit case presenting similar factual circumstances, *FTC* found debts stemming from dishonored checks to be included in the FDCPA's definition of "debt."  In *Bass*, the plaintiff used a check to pay for groceries which was subsequently dishonored by his bank for insufficient funds. *Bass*, 111 F.3d 1323. After illegal collection activity on behalf of the grocery, the plaintiff filed an FDCPA law suit against the collection agency. *Id.* The defendant sought to dismiss the action arguing that by tendering a check with insufficient funds to the grocery, the plaintiff broke Wisconsin state law— a tortious and criminal act— and therefore no consensual transaction occurred and the FDCPA should not apply. *Id.* at 1329. In determining FDCPA applicability, the *Bass* court analyzed the FDCPA's definition of a "debt" stating that "as long as the transaction creates an obligation to pay, a debt is created." *Id.* There, holding that a bounced check evidenced an obligation to pay for the purchases (transactions) made with the check, the court held the FDCPA applied. *Id.* In *FTC*, the Third Circuit addressed a similar bounced check scenario, where the defendant alleged that the FDCPA did not apply because the transaction was not consensual, but rather the result of illegal and tortious activity. *FTC v. Check Investors, Inc.*, 502 F.3d at 169. Applying *Bass*, the Third Circuit held that the FDCPA applied because tendering the check in exchange for purchasing goods or services created an obligation to pay, regardless of whether the act of providing a check with insufficient funds violated a state law. *Id.* at 170.

i.  E-ZPass Transactions Constitute "Pro Tanto" Exchanges for Passage

By utilizing an E-ZPass transponder to pass through a toll, the consumer incurs an obligation to pay directly in exchange for passage; thus an E-ZPass debt is a "debt" under the FDCPA. Similarly to *Pollice* where the consumer's monetary liability arose in exchange for the

4

water used, an E-ZPass debt arises out of a "pro tanto" exchange of payment for passage, and is therefore a "debt." Contrastingly, an E-ZPass debt is not comparable to property tax, because unlike payment of taxes where the consumer does not negotiate anything in return, an E-ZPass debt is an express amount exchanged for passage of a specific toll. Thus, an E-ZPass debt is a consensual transaction the result of a "pro tanto" exchange.

Even further, this case is easily analogous to *FTC* and *Bass* where the consumers used a non-cash vehicle (a check) to pay for merchandise, because Rosenzweig also used a non-cash vehicle (his E-ZPass transponder) to pay for the toll. In fact, the E-ZPass transponder which pulls from an E-ZPass account is directly akin to a check which pulls from a checking account. In both instances the check or transponder merely draw on the underlying account (and credit associated therewith), and evidence the drawer's obligation to pay for the purchase with the check or transponder; should the check or transponder "bounce," the consumer's obligation remains nonetheless. Considering that use of an E-ZPass transponder creates an obligation to pay arising from the "pro tanto" exchange of money for passage, an E-ZPass debt is a "debt" as that term is defined by the FDCPA.

ii. E-ZPass Transactions Arise From Consumer Contracts

Not only was Rosenzweig's use of the E-ZPass transponder a "pro tanto" exchange for toll services, the obligation arose out of a consumer contract further establishing said debt as a "debt" under the FDCPA. In its motion to dismiss, Defendant dismisses Plaintiff's arguments that the debt is contractual in nature by stating that Plaintiff has not provided the underlying contract between himself and Defendant—a statement which completely undoes Defendant's argument that dismissal is warranted at the pleading stage. First, whether a contract exists between Rosenzweig and E-ZPass is a matter which requires discovery; production of said

5

contract is not required at the pleading stage. Second, Rosenzweig has already provided

Defendant with what he believes to be the contractual terms of the agreement, from E-ZPass's

current website.[1] These terms clearly state:

> These Terms and Conditions, together with your application, constitute your E-ZPass Agreement (the "Agreement"). A copy of these Terms and Conditions will be mailed to you along with your tag(s). Please read these terms and conditions and keep them for your records. When you open your Account and use your New Jersey E-ZPass tag(s), you agree as follows:
> …

Exhibit A.

It is unclear how Defendant can possibly take the position that there is no contract

between Rosenzweig and Defendant after reading the very first paragraph of the agreement

previously provided to the Defendant in support of Rosenzweig's motion to amend.[2]

Notwithstanding the above, Defendant's collection letter itself evidences the existence of a

contract. The letter, attached as Exhibit A to Rosenzweig's complaint sought to collect $55.50.

Of that amount, Defendant admits that Rosenzweig was obligated to pay $5.50 in exchange for

passage through a toll, and an additional $50 administrative fee—as provided for by contract[3]—

as a result of Rosenzweig's passage through the toll with an alleged negative E-ZPass balance.

(Def. Opp. 1). In other words, Defendant is attempting to collect a fee specifically provided for

by contract, while at the same time arguing that no contract exists, and there is no contractual

relationship with Rosenzweig. In sum, considering the debt arose out of a consumer contract,

---

[1] Said contract is attached to this Opposition as Exhibit A.
[2] This agreement was taken directly from E-ZPass New Jersey's website. Rosenzweig's Counsel presumes that this same agreement was entered into at the time Rosenzweig opened his E-ZPass account. Rosenzweig therefore requires discovery from Defendant to confirm that these terms are the same terms that applied to Rosenzweig at that time.
[3] Exhibit A Section 6(a) provides for an administrative fee of $50 to E-ZPass holders in the event that the account reaches a negative balance. This fee, provided for by contract, is akin to a bank overdraft which is also considered a debt under the FDCPA. Just like when a checking account goes beyond the dollar amount deposited, the bank will extend credit and seek a fee, when E-ZPass passes below the threshold, it covers the toll charge and charges the consumer a fee.

and Defendant's own collection efforts evidence such, it is clear that both the underlying toll debt and administrative fee are considered "debts" under the FDCPA.

At least one court has found that E-ZPass debts are "debts" under the FDCPA. In *Brown v. Transurban USA. Inc*., 2015 U.S. Dist. LEXIS 148489 (E.D. Va. Nov. 2, 2015), the court held that since the plaintiff contracted with E-ZPass for a transponder device, and the plaintiff maintained those devices within the plaintiff's vehicle, the debts arose out of a contractual relationship and were therefore subject to the FDCPA. *Id.* at 73-77. The Court should similarly apply a holding that E-ZPass debts are governed by the FDCPA.

      b.   The FDCPA Does Not Contain the Fraud Exception Sought By Defendant

The Third Circuit has expressly rejected Defendant's final argument that the Court should carve out a fraud exception within the FDCPA. In its moving papers, Defendant argues that because Rosenzweig's conduct violated *N.Y. Comp. Codes R. & Regs. tit. 21, §§ 1020.7, 1021.3 and 1023.7*, the FDCPA should not protect him. In fact, even had Rosenzweig intentionally committed a criminal or tortious act while incurring a debt,[4] that would not place said debt beyond FDCPA regulation, as per Third Circuit precedent.

In both *FTC* and *Bass* the Courts addressed whether FDCPA applicability was limited in instances where the consumer debtor violated a state law while incurring the debt in question— also known as a fraud exception. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C*., 111 F.3d 1322, 1329-1330 (7th Cir. 1997). After analyzing the goals of the FDCPA, and whether Congress intended to create a fraud exception, *Bass* expressed its discomfort with creating such an exception to the FDCPA, given Congress's clear unwillingness to specifically place such an exception within the Act. *Id.* One year later, in *Keele v. Wexler*, 149 F.3d 589, 596 (7th Cir.

---

[4] A matter deeply disputed by Rosenzweig as explained in Rosenzweig's FAC—at times the E-ZPass scanner malfunctioned.

7

1998) the Seventh Circuit again addressed the issue and conclusively held that Congress did not intend to create a fraud exception even where a consumer debtor *specifically intended* to violate a state law while incurring a debt. Citing both *Bass* and *Keele*, in *FTC*, the Third Circuit rejected the existence of a fraud exception to the FDCPA and conclusively held that the FDCPA applies even where the underlying debt was incurred simultaneously with a violation of state law. *FTC v. Check Investors, Inc*., 502 F.3d 159, 169-171 (3d Cir. 2007).

Defendant's argument that the FDCPA should not apply to Rosenzweig's alleged conduct because said conduct violated *N.Y. Comp. Codes R. & Regs. tit. 21, §§ 1020.7, 1021.3 and 1023.7* is untenable. Violation of New York's laws concerning the failure to pay a toll is directly akin to the state laws addressed in *Bass* and *FTC* which consider it to be a criminal offense to tender dishonored checks. Yet both *Bass* and *FTC* held that the FDCPA properly applied to such debts, as the FDCPA does not contain a fraud exception. Considering clear Third Circuit precedent has already declined to find the fraud exception Defendant argues for, Defendant's motion should be denied.

Notwithstanding the above cited precedential authority opposing Defendant's fraud exception, accepting Defendant's argument would ultimately eradicate the FDCPA in its entirety. After all, statutes exist in every state which require that all goods and services must be paid for (e.g. larceny statutes). According to Defendant, the FDCPA should never apply to any unpaid debt because the failure to pay has violated at least one larceny statute. This would lead to the absurd result that an individual who uses a credit card to purchase something, but then never pays his bill is no different than an individual who walks into the store and steals merchandise. Yet, the non-payment of the credit card bill is clearly a "debt" under the FDCPA. Thus, if Rosenzweig simply drove through the E-ZPass lane with no transponder, it would

8

indeed be theft as Defendant contends. However, that is not what happened here, and so the toll obligation is a "debt" under the FDCPA.

In furtherance of its position that a fraud exception should be applied to the FDCPA, Defendant hopelessly relies on a single unpublished, non-precedential opinion which actually supports Rosenzweig's position. In *Yazo v. Law Enforcement Sys.*, 2008 U.S. Dist. LEXIS 93345, *8 (C.D. Cal. Nov. 7, 2008) the plaintiff drove on a toll highway which <u>required</u> the plaintiff to drive a vehicle with either a transponder or some "other toll payment device associated with a valid Automatic Vehicle Identification account." *Id.* There, the plaintiff had neither requirement. *Id.* Considering that the plaintiff entered a road without the required devices, the court held the transaction akin to theft, with no capability of being considered a debt contractual in nature. *Id.* In expressing said opinion, the court expressly recognized that the use of a toll road can be a consensual consumer transaction where payment of the toll arises out of a contractual relationship, as in our case. *Id.*

Contrary to the factual scenario of *Yazo*, in this case Plaintiff drove on a toll-required-highway <u>with</u> an E-ZPass transponder, the result of a consumer contract, within his vehicle. On some occasions the toll booth would properly read his transponder, but on other occasions it would not. (ECF 29 ¶ 14). *Arguendo*, assuming the debt was incurred while Rosenzweig's balance was below the threshold amount, he had a legal right to defer payment because he had an E-ZPass device much like a credit card or check, and his failure to replenish the account is the result of a breach of contract. Being contractual in nature, therefore, an E-ZPass debt is a "debt" under *Yazo*.

To the extent Defendant may argue, as it has in prior motion practice, that a toll charge is directly akin to a parking ticket, such an argument must be rejected. A violation such as a

9

parking ticket does not arise out of any "pro-tanto" exchange. Rather, a violator gets nothing in return for payment of the ticket, rendering such a debt quite similar to the property tax bill addressed in *Pollice*, which the Third Circuit clearly held was not a "debt." Even further, a parking ticket does not arise out of a consumer contract, but is a one sided fine. Thus, an E-ZPass debt is simply not comparable to such a ticket given the "pro-tanto" nature and the underlying contractual agreement.

Notwithstanding the above, considering that Defendant has always treated the debt as governed by the FDCPA, as presented in its initial dunning letter supplied to this Court as Exhibit A to the original complaint, Defendant should be precluded from back tracking. In *Hansen v. Ticket Track, Inc*., 280 F Supp. 1196. (W.D.Wash., 2003), the plaintiff parked in a lot and failed to pay the parking fee. As a result, the plaintiff owed the parking fee and a violation fee by contract.[5] *Id*. Similarly to this case, the Ticket Track argued the toll fees were the result of theft and criminality and therefore were not debts. *Id*. Denying this very assertion, the court stated:

> Defendant cannot have it both ways. On the one hand, defendant argues that there is an implied contract that its customers have breached by failing to pay the appropriate fees. On the other hand, defendant argues that no "debt" is created within the meaning of the act because the customers are stealing services.
> …
>
> In the present case, defendant appears to have always treated plaintiffs' obligations as contractual in nature, not tortious. All of defendant's documents, including the notices, collection envelopes, and collection letters indicate that Ticket Track is a debt collection agency attempting to collect a debt. If Ticket Track considered the acts of the plaintiffs to be a "theft of services," there would be no "debt" to be collected; instead, "damages" would be claimed. No where in any of the notices, envelopes or letters was there any reference to

---

[5] The contract was an implied contract formed by the posting of signs explaining the parking fees and violation fees, and the plaintiff's choice to accept those terms while parking in the lot.

settlement of a tort claim resulting from trespassing or conversion. Defendant should not be able to change its basis for its original claims mid-stream.

*Id.* at 1202-1203.

In the instant case, Defendant has always treated the debt as a debt governed by the FDCPA and contractual in nature. As Exhibit A to the original complaint demonstrates, Defendant's collection letter clearly states "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector." Furthermore, Defendant's letter also informs Rosenzweig of his rights to dispute the debt within 30 days, which are specifically and exclusively provided for under the FDCPA. Nowhere within Defendant's letter does it describe the tortious or criminal nature of Rosenzweig's offense, nor does the letter mention anything concerning damages. Thus, similarly to *Hansen*, the Court should not allow Defendant to change its position mid-stream for statements it has already admitted to.

In sum, Rosenzweig's payment obligation arose out of a "pro tanto" exchange for passage, as well as through the use of a transponder received as part of a consumer contract. As such, the toll obligation is a "debt" as that term is used under the FDCPA. Further, considering that there is no fraud exception to the FDCPA, Defendant's arguments are unavailing. Thus, Defendant's motion should be denied.

II.    THE TCCWNA DIRECTLY APPLIES TO DEFENDANT'S ILLEGAL
       COLLECTION CONDUCT

Defendant asserts that the TCCWNA does not apply because Rosenzweig is not a

consumer, Defendant did not provide a written contract, and Defendant is neither a creditor nor a

bailee. In fact, Rosenzweig has adequately pled the required elements for his TCCWNA claim.

First, Rosenzweig is a consumer under the TCCWNA. The TCCWNA defines consumer

in the much same fashion as the FDCPA[6]: "Consumer means any individual who buys, leases,

borrows, or bails any money, property or service which is primarily for personal, family or

household purpose. N.J.S.A. § 56:12-15. In Rosenzweig's First Amended Complaint ("FAC"),

Rosenzweig has clearly stated that he used his E-ZPass transponder to buy toll services for

personal, family, and household purposes. (ECF 29 ¶ 11-12). Rosenzweig replead these

allegations in Count III of his FAC. (ECF 29 ¶ 80). Thus, Rosenzweig has in fact plead that he is

a consumer as defined under the TCCWNA.

Second, Defendant's collection letter to Rosenzweig is a notice under the TCCWNA.

Contrary to Defendant's implication that the TCCWNA requires a creditor or bailee to enter a

consumer *contract* in order for liability to be established, the TCCWNA makes clear that a notice

or sign is sufficient. In *Rickenbach v. Wells Fargo Bank, N.A.,* 635 F. Supp. 2d 389, 392 (D.N.J.

2009), the defendant filed a foreclosure proceeding against the plaintiff for nonpayment. Counsel

for the plaintiff requested that the defendant provide him a payoff statement for the mortgage. *Id.*

In response, the defendant sent a letter stating the amount of the debt, and the additional fees

incurred. *Id.* There, the court held that the letter containing the balance and the amount was a

---

[6] Under the FDCPA, a consumer is defined as any natural person obligated or allegedly obligated to pay any debt for which the subject of the transaction is primarily for personal, family, or household purposes. 15 USCS § 1692a. Although the TCCWNA and FDCPA present nearly identical definitions, Defendant did not contest whether Rosenzweig is a consumer under in opposition to his FDCPA claims, because it could not. There is no dispute that the debt arose out of personal, family, or household purposes.

12

"notice" under the TCCWNA. *Id.* at 400; *see also DeHart v. US Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1051 (D.N.J. 2011) (holding letter sent concerning the debt constitutes a "notice" under the TCCWNA). Common sense further dictates that a letter sent from the defendant seeking payment for the debt, and advising the consumer that the debt may increase is a notice. After all, if a letter advising a consumer that they owe money and the consequences of non-payment is not notice of the debt, what is it? Thus, Defendant's letter to Rosenzweig meets the definition of "notice" under the TCCWNA.

Third, Defendant is a creditor or a bailee. It is not clear from Defendant's letter whether the Defendant has in fact purchased the underlying debt or whether they are only collecting on behalf of E-ZPass. This is a question of fact. Defendant's letter clearly states that checks should be made out to Defendant as opposed to the original creditor suggesting that Defendant is in fact acting as the current creditor.  If Defendant has purchased the debt, they are the current creditors and thus fall within the creditor designation under the TCCWNA.

Alternatively, if Defendant is merely collecting on behalf of E-ZPass, Defendant is a bailee. "The elements of bailment are delivery of personal property by one person to another in trust for a specific purpose, acceptance of such delivery, and express or implied agreement to carry out the trust and return the property to the bailor." *Sgro v. Getty Petroleum Corp.*, 854 F. Supp. 1164, 1174-75 (D.N.J. 1994); *Zucker v. Kenworthy Bros.*, 130 N.J.L. 385, 387 (1943). In this case, in the event Defendant does not own the debt, E-ZPass delivered its rights to collect the debt to Defendant, specifically so that Defendant may attempt to collect the debt on its behalf. Once the Defendant receives funds from a consumer for debts owed to E-ZPass, Defendant returns the rights to collect the debt, with the funds collected, to E-ZPass. Thus, Defendant falls directly within the definition of a bailee.

13

Defendant's reliance on *Boyko* and *Ogbin* cannot support its position that the TCCWNA does not apply. Both the *Boyko* and *Ogbin* courts specifically dismissed the plaintiffs claims because each plaintiff failed to allege that the debt collector was a creditor or bailee, and so it was clear that the elements of a TCCWNA claim were not established. *Boyko v. American Intern. Group, Inc.*, 2009 WL 5194431 at *5 (D.N.J. Dec. 23, 2009); *Ogbin v. GE Money Bank*, 2011 WL 2436651 at *4 (D.N.J. June 13, 2011). Here, Rosenzweig has clearly pled that Defendant is either a creditor or a bailee, and thus meets the requirement of the TCCWNA.

Considering that Defendant is a creditor or bailee, Defendant sent a notice to Rosenzweig that violated the FDCPA, and Rosenzweig is a consumer, Defendant has established a TCCWNA violation. As such, Defendant's motion to dismiss should be denied.

## CONCLUSION

For the reasons established herein, Rosenzweig requests that the Court deny Defendant's Motion to Dismiss the Amended the Complaint.

Dated: November 1, 2016.

Respectfully Submitted,

_____/s/ Daniel Zemel_____

Daniel Zemel, Esq.
**Zemel Law, LLC**
70 Clinton Ave.Suite 3
Newark, New Jersey 07114
(T) 862-227-3106

14

dzemellaw@gmail.com
Attorneys for Plaintiff

_____/s/ Fred M. Zemel_____

Fred M. Zemel, Esq.
**The Zemel Law Firm, P.C.**
70 Clinton Ave.
Newark, New Jersey 07114
(T) 973-622-5297
Thezemellawfirm@optimum.net
Attorneys for Plaintiff