NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARON ROSENZWEIG, individually and on behalf of all others similarly situated, *Plaintiff*, v. TRANSWORLD SYSTEMS INC., *Defendant*. | Civil Action No. 16-00227 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

### I.   INTRODUCTION

This matter comes before the Court on Defendant Transworld Systems Inc.'s ("Defendant" or "TSI") motion to dismiss for failure to state a claim. Plaintiff brings a class action against TSI alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA"), the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 ("CFA"), and the Truth in Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-15 ("TCCWNA"). The Court reviewed all submissions made in support and in opposition to the motion, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons that follow, Defendant's motion is granted.

### II.   FACTS AND PROCEDURAL HISTORY

This matter arises from an unpaid toll that Plaintiff incurred through the use, or failure thereof, of an E-ZPass transponder. First Amended Complaint ("FAC") ¶¶ 9-10. Plaintiff alleges

that he entered into a contractual relationship with E-ZPass where he used an extension of credit to pay tolls in E-ZPass approved toll lanes. *Id.* ¶ 12. Plaintiff does not attach to his pleadings a copy of the contract with E-ZPass nor does he allege its relevant terms. Instead, Plaintiff attaches to his opposition papers a contract from E-ZPass's current website "with what he believes to be the contractual terms of the agreement." D.E. 33 at 6. It is not clear whether this was the operative contract at the time Plaintiff incurred the obligation allegedly owed.

Plaintiff states that sometimes the E-ZPass machine at the toll booths failed to scan his transponder properly, and as a result, he would subsequently receive bills for unpaid tolls and fees. Compl. ¶ 14. However, Plaintiff does not allege that the particular debt at issue in this matter was caused by the E-ZPass device failing to properly scan Plaintiff's transponder.

On June 29, 2015, TSI mailed a "dunning" letter to Plaintiff in an attempt to collect $55.50 allegedly owed to MTA Bridges and Tunnels E-ZPass. *Id.* ¶¶ 15, 20. The amount consisted of $5.50 due to an unpaid toll or tolls as well as a $50.00 administrative fee. The letter states, "Current Balance Due: $55.50" and that "[y]our account balance may be periodically increased due to the addition of accrued interest or other charges as provided in the agreement with the original creditor or as otherwise provided by law." *Id.* ¶¶ 20-21. Plaintiff alleges that both of the aforementioned statements are "false, deceptive, and misleading." *Id.* ¶ 22. Plaintiff states that "[a]greements between MTA Bridges and Tunnels E-ZPass and consumers do not allow for interest or other miscellaneous charges" and that "New Jersey state law does not provide for interest on a debt due and owing." *Id.* ¶¶ 23-24. Additionally, Plaintiff alleges that "the words '*current* balance due' are specifically used by Defendant to further the perception[] that the amount being sought at present is subject to increase if payment is not made imminently." *Id.* ¶ 32. Plaintiff pleads that TSI is a

2

"debt collector" as defined by the FDCPA and that the amount owed is allegedly due to a "creditor" other than TSI. *Id.* ¶¶ 7-8.

Plaintiff's alleges violations of: (1) the FDCPA, (2) the CFA, and (3) the TCCWNA. Defendant filed a motion to dismiss all three Counts. Plaintiff filed an opposition and Defendant replied.[1] Plaintiff does not oppose Defendant's motion to dismiss the CFA claim. Therefore, Count Two is dismissed. *See Lightfoot v. Healthcare Revenue Recovery Grp., LLC*, No. 14-6791, 2015 WL 1103441, at *4 (D.N.J. Mar. 11, 2015) (stating that the "[d]efendant's Motion to Dismiss Count Four is unopposed and will be granted").

### III.  LAW AND ANALYSIS

#### A. Standard of Review

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when it fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss under Rule 12(b)(6) the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.2002). In addition to the complaint, the court may also consider any exhibits attached thereto. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that when deciding a motion to dismiss, courts generally consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

---

[1] Defendant's brief in support of its motion (D.E. 30) will be referred to as "Def. Br." Plaintiff's brief in opposition (D.E. 33) will be called "Pl. Opp." Defendant's reply brief (D.E. 34) will be referred to as "Def. Rep."

3

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While not a "probability requirement," plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). Additionally, a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B. FDCPA

The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013). To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)). "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Here, only the third element is at issue. Specifically, Defendant moves to dismiss the FAC on the basis that "the unpaid toll violation, and the resulting toll violation fee, are not consumer debts under the FDCPA." Def. Br. at 3.

The FDCPA defines "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. 1692a(5).

The definition of a "debt" was analyzed by the Third Circuit in *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000). The Third Circuit explained that a debt arises out of a "consensual consumer transaction[ ] . . . whose subject is primarily for personal, family, or household purposes." *Id.* at 401. At issue in *Pollice* was whether a homeowner's obligations to pay water and sewer utilities, as well as property taxes, constitute debts under the FDCPA. *Id.* at 400-01. As to water and sewer services, the court concluded they were debts because when the obligations first arose, the homeowners were required "'to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was

5

'services . . . primarily for personal, family, or household purposes.'" *Id.* at 401. The Third Circuit, however, found that property taxes were not debts under the FDCPA. *Id.* To support its conclusion, the court cited to prior precedent which held that "a per capita tax obligation is not a 'debt' for purposes of the FDCPA." *Id.* at 401 (citing *Staub v. Harris*, 626 F.2d 275, 276-79 (3d Cir. 1980)). With that principle in mind, the *Pollice* court explained that "[t]he relationship between taxpayer and taxing authority does not encompass that type of *pro tanto* exchange which the statutory definition envisages." *Id.* In other words, the Third Circuit reasoned that property taxes are not debts because they "are not obligations arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* at 401-02 (internal quotation marks omitted).

Courts from other jurisdictions have addressed the issue of whether an obligation to pay a toll is considered a debt under the FDCPA. In *Yazo v. Law Enforcement Systems, Inc.*, the Central District of California held that delinquent tolls do not constitute debts under the FDCPA. No. 08-03512, 2008 WL 4852965, at *2 (C.D. Cal. Nov. 7, 2008). The *Yazo* court reasoned that "when a driver fails to pay the toll charge, the use of the toll road is akin to theft." *Id.* at *3. Accordingly, the *Yazo* court found that "a transaction in which a driver fails to pay fees on [a toll road] is not consensual" and "is outside the scope of 'debt' as contemplated by the FDCPA." *Id.*

In *Brown v. Transurban USA, Inc.*, the Eastern District of Virginia concluded that an obligation arising from non-payment of a toll by E-ZPass holders was a debt under the FDCPA. 144 F. Supp. 3d 809, 842 (E.D. Va. 2015). In that case, the plaintiffs alleged that "in many cases" the toll collection equipment registered "a 'violation' even where a valid, fully funded E-ZPass account [was] in existence." *Id.* The court reasoned that the "[p]laintiffs have not in fact committed a toll infraction, but rather [the defendant] has simply neglected to collect the toll at the

6

moment of entry." *Id.* Therefore, without providing any additional reasoning, the court in *Brown* concluded that "the alleged toll violations at issue here are properly understood as 'consensual transactions'" and constitute debts under the FDCPA. *Id.*

Similarly, in *Yunker v. AllianceOne Receivables Management.*, the court held that toll obligations arising after the plaintiff enrolled in Sunpass, a prepaid toll program, constituted a debt under the FDCPA for three reasons. No. 10-61796, 2011 U.S. Dist. LEXIS 159445 (S.D. Fla. Jul. 19, 2011). First, the Southern District of Florida noted that the FDCPA is a remedial statute and is construed liberally in favor of protecting debtors from abusive practices. *Id.* at *6–7. Second, the *Yunker* court found the plaintiff entered into an agreement with Sunpass for "personal purposes," while consenting to abide by the agreement's terms. *Id.* at *7. Finally, the court reasoned that the Sunpass agreement was a consensual consumer transaction because the plaintiff had the opportunity to manually pay the tolls at the toll booth, but instead chose to enter into the Sunpass agreement. *Id.* at *8.

In a case from this District, Judge Wolfson decided that collection of an obligation arising from non-payment of a toll does not constitute a debt under the FDCPA. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, No. 15-2596, 2017 WL 1102635 (D.N.J. Mar. 24, 2017).[2] In *St. Pierre*, the plaintiff alleged that he entered into a contractual agreement with E-ZPass that required him to maintain a pre-paid balance to pay toll charges at the time he passed through the toll. *Id.* at *1. The plaintiff drove through tolls while he had insufficient funds in his account resulting in outstanding tolls and penalties being owed to E-ZPass. *Id.* As a result, the defendant debt collector sent the plaintiff multiple collection letters that the plaintiff claimed violated the FDCPA. *Id.* The

---

[2] *St. Pierre* is currently on appeal to the Third Circuit. One issue on appeal that is not before this Court is whether the plaintiffs had standing to bring their claims under the FDCPA. Because the standing issue is not raised in this matter, the Court does not address it.

7

defendant argued that the delinquent toll charges and penalties were not debts under the FDCPA. *Id.* at *3.

Judge Wolfson began by noting that the statutory definition of "debt" requires "a consumer to pay money arising out of a transaction . . . [that is] primarily for personal, family, or household purposes." *Id.* at *7 (quoting 15 U.S.C. § 1692a(5)). Judge Wolfson explained that "[a]lthough Congress has not defined the term 'transaction,' the Third Circuit has explained that the 'debt' must arise out of a pre-existing relationship in which a debtor voluntarily elects to avail himself of either consumer goods or services." *Id.* at *7 (citing *Pollice*, 225 F.3d at 401; *Staub*, 626 F.2d at 278; *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 233 n.8 (3d Cir. 2005)). The *St. Pierre* court noted that it was undisputed that the plaintiff had entered into an express contractual relationship with E-ZPass. *Id.* Judge Wolfson explained, however, that despite the existence of a contractual relationship, the court must "determine whether the obligation to pay arises from a consumer transaction that is 'primarily for personal, family, or household purposes.'" *Id.* (quoting 15 U.S.C. § 1692a(5)).

Judge Wolfson analyzed the Third Circuit's decision in *Pollice* to draw a distinction between taxes (which generally are not debts) and direct services, such as water and sewer usage (which generally are debts). *Id.* at *8. The *St. Pierre* court explained that "tolls are akin to taxes because the funds from tolls are used for more general purposes." *Id.* The court reasoned that the New Jersey Legislature enacted certain statutes authorizing the government to use toll revenues to, among other things, repair, operate, and modernize the State's roads. *Id.* (citing N.J.S.A. 27:23-1 & 27:23-5(e)). Judge Wolfson emphasized that "[u]nlike a traditional consumer relationship, but like revenue generated by taxes, revenue generated from tolls is used for the benefit of the public at large, including the construction, maintenance and improvement of the roads." *Id.*

Therefore, the court held that the requirement "to pay tolls does not arise from a transaction that is 'primarily for personal, family, or household purposes'" and is not a debt. *Id.* (quoting 15 U.S.C. § 1692a(5)).

Judge Wolfson also addressed the decisions in *Brown* and *Yunker*, disagreeing with their conclusion that "when a person contracts with an electronic toll collection provider, the arrangement somehow changes or alters the underlying source of the obligation to pay those tolls and penalties," thus converting the amount owed into a debt. *Id.* at *9. The court in *St. Pierre* explained that the plaintiff's "obligation to pay the outstanding tolls and penalties did not arise out of the [a]greement between [the] [p]laintiff and E–ZPass; instead, it is clear that New Jersey state law is the source of the obligation at issue." *Id.* at *10. Judge Wolfson then provided a thorough analysis of the New Jersey statutes and regulations that require payment of tolls to travel on certain roadways and those that permit drivers to pay the tolls via E-ZPass. *Id.* (citing, for example, N.J.SA. 27:23-25; N.J.A.C. 19:9-1.19; N.J.S.A. 27:23-34.1 to 3; N.J.A.C. 19:9-9.1 to 3). Like the Central District of California in *Yazo*, the *St. Pierre* court concluded that "because the use of New Jersey toll roads without payment violates state law, that obligation does not arise out of the E–ZPass Agreement." *Id.* In other words, the court found that the amount owed "arose out of [the] [p]laintiff's obligation to pay tolls under New Jersey law," irrespective of the E-ZPass agreement. *Id.* Therefore, the Judge Wolfson concluded that the "the obligation to pay delinquent tolls does not constitute a 'debt' within the meaning of the FDCPA." *Id.*

Judge Wolfson noted that it was possible that certain obligations, unrelated to tolls and penalties, could have arisen out of the E-ZPass agreement. *Id.* n.6. As an example, the court explained that if the plaintiff "failed to pay the monthly membership fee of one dollar, that

9

obligation could arguably be considered a 'debt' because it was created by the [a]greement, and not by operation of law." *Id.*

Here, the Court initially concludes that Plaintiff fails to plausibly plead a cause of action under the FDCPA. The Court finds that Plaintiff has not plausibly pled that he had a contract with E-ZPass. Plaintiff does not plead the essential terms of the E-Zpass contract, nor does he attach the actual contract to the FAC. Instead, Plaintiff argues that the question of whether a contract exists between him and E-ZPass "is a matter that requires discovery." Pl. Opp. at 5. Plaintiff, however, cannot argue that the toll obligation arose out of the E-ZPass contract when Plaintiff is unsure what the terms of the alleged operative contract are. *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 807 (3d Cir. 2006) (stating that a plaintiff must include the "essential terms" of a contract in order to plausibly plead that a contract exists).

Here, Plaintiff attaches to his opposition papers a document retrieved from the E-ZPass website that "he *believes* to be the contractual terms of the agreement." Pl. Opp. at 6 (emphasis added). First, Plaintiff must plausibly plead the actual contract that he has/has with EZ-Pass. Moreover, the terms of the agreement provided by Plaintiff undercut the factual allegations in the FAC because, contrary to the allegations pled, the agreement does not permit for an extension of credit. According to Section 2(g) of the E-ZPass agreement submitted with Plaintiff's opposition, the E-ZPass holder agrees to "not use any lane accepting E-ZPass if your [a]ccount has an insufficient balance. You must pay with cash in a cash lane, otherwise you may be treated as a violator." Pl. Opp. Ex. 1. In contrast, the FAC states that Plaintiff and E-ZPass entered into a contract "for the extension of credit, wherein [Plaintiff] may utilize the credit granted to him by [E-Z]Pass at [E-Z]Pass approved toll lanes. Some times [sic], [Plaintiff's] account carried a positive balance. Other times, [Plaintiff] utilized the credit extended to him by [E-Z]Pass." FAC

10

¶ 12. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). These conflicting facts are another reason why the FDCPA claim is not plausibly pled.

Additionally, Plaintiff does not allege that the particular amount TSI sought to collect was the result of a failed transponder or that there were sufficient funds in his account to pay the alleged amount owed. Instead, Plaintiff alleges generally that he received bills when his transponder failed, but he does not claim that the obligation in this matter is the result of such a failure. As conceded by Plaintiff, if he "simply drove through the E-ZPass lane with no transponder, it would indeed be theft as Defendant contends." Pl. Opp at 8-9. Thus, because Plaintiff does not plead that the particular toll obligation owed was the result of a failed transponder, the manner in which Plaintiff incurred the obligation -- whether through theft, malfunction, or otherwise -- is unclear. Therefore, the FDCPA claim is not plausibly pled for this reason as well.

However, even if Plaintiff made plausible allegations, the Court must determine whether Plaintiff's toll obligation is a "debt" under the FDCPA. In this regard, the Court adopts the sound and thorough reasoning of Judge Wolfson's opinion in *St. Pierre* and concludes that a delinquent toll is not a debt. Plaintiff raises four primary issues with *St. Pierre*'s holding.

First, Plaintiff contends that the controlling test to ascertain if an amount owed is a debt is determined by whether a *pro tanto* exchange occurred. D.E. 36 at 2. Plaintiff argues that *St. Pierre* was incorrect in holding that the relevant inquiry is whether the amount owed is "obligated under law" or "what the receiving entity does with the revenue received." *Id.* In *St. Pierre*, however, Judge Wolfson considered not only these factors, but also focused on the similarity between tolls and taxes, which the Third Circuit has made clear are not debts. *See St. Pierre*, 2017 WL 1102635

11

at *8. Indeed, the critical inquiry is whether the obligation is the "result of a consensual consumer transaction in which [an individual] voluntarily elects or requests to receive the services" offered. *Weiss v. McElwee*, No. 14-1858, 2016 WL 96144, at *4 (D.N.J. Jan. 8, 2016). Put differently, "if the amount of the obligation imposed for . . . services is mandatory, then it does not qualify as a 'debt.'" *Id.* In short, the Court finds Judge Wolfson's reasoning in *St. Pierre* persuasive, and therefore rejects Plaintiff's argument. The Court finds that tolls are akin to taxes for using the particular route.[3]

Second, Plaintiff argues that unlike the plaintiff in *St. Pierre* who allowed his E-ZPass account to become delinquent, Plaintiff claims that his toll obligation was caused by a failed E-ZPass transponder. D.E. 36 at 3. Thus, Plaintiff claims that the facts here are similar to those in *Brown* and distinguishable from *St. Pierre*. The Court disagrees. As explained above, Plaintiff does not allege that a faulty transponder caused the particular toll obligation at issue. Plaintiff merely alleges generally that sometimes the E-ZPass machinery did not properly scan his transponder. Therefore, the Court finds this argument unpersuasive.

Third, Plaintiff argues that he entered into an "express contractual relationship" in which he voluntarily elected certain E-ZPass services, which required paying $10 for a transponder and $1 for a monthly membership fee. *Id.* Plaintiff contends that these facts are similar to *Yunker* where the plaintiff paid for a transponder and pre-payment of tolls, and the court found that the delinquent toll owed was a debt covered by the FDCPA. *Id.* at 4. As explained in *St. Pierre*, it is

---

[3] Using the issues in *Pollice* as an example, a homeowner must pay his or her property taxes. A homeowner, however, can decline water and sewer service. While the wisdom of such a declination may be questioned, a homeowner may nevertheless decide that he or she does not wish to use certain utilities. Here, the user of the roads in question must pay the tolls. Of course, it can be argued that the driver can also decide not to travel on a toll road but then so can a property owner decide not to purchase the property in the first instance.

possible that obligations unrelated to tolls and penalties, such as the monthly membership fee, could be considered a debt. 2017 WL 1102635 at 10 n.6. However, for the reasons discussed in this Opinion, the tolls and penalties themselves are not debts under the FDCPA.

Finally, Plaintiff maintains that "Defendant's collection letters treated the debt as one governed by the FDCPA throughout its collection efforts, so the FDCPA should apply." D.E. 36 at 4. The Court disagrees. The proper inquiry is whether the obligation in question is a debt as defined by the FDCPA, not whether a defendant happens to call it a debt. *See Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *5 (D.N.J. May 2, 2013) (concluding that merely because a defendant calls itself a "debt collector" does not mean that it is a debt collector under the FDCPA; the proper inquiry is whether the defendant meets the definition of debt collector as defined by the act); *see also Siwulec v. Chase Home Fin., LLC*, No. 10-1875, 2010 WL 5071353, at *5 (D.N.J. Dec. 7, 2010). Surely, collection of a property tax would not be converted into a "debt" under the FDCPA merely because the collector called it one. The same is true here.

### C. TCCWNA

Defendant argues that Plaintiff fails to state a claim under the TCCWNA for, among other reasons, failing to plausibly plead that Defendant is a "seller, lessor, creditor, lender or bailee" as required by the Statute. Def. Br. at 11. Plaintiff counters that Defendant is either a creditor or bailee. Pl. Opp. at 13. The Court disagrees and finds that Plaintiff fails to plausibly plead a claim under the TCCWNA.

Section 15 of the TCCWNA provides, in relevant part, that

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor,

13

> lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15. To state a claim under the TCCWNA, a plaintiff must plead the following four elements:

> (1) the plaintiff is a consumer; (2) the defendant is a seller, lessor, creditor, lender or bailee; (3) the defendant offers the plaintiff a contract or gives or displays any written notice or sign; and (4) the contract, notice, or sign includes a provision that violates any legal right of a consumer or responsibility of the seller, lessor, creditor, lender or bailee.

*Truglio v. Planet Fitness, Inc.*, No. 15-7959, 2016 WL 4084030, at *8 (D.N.J. July 28, 2016). Here, Plaintiff does not allege that Defendant is a seller, lessor, or lender. Therefore, the only question is whether Plaintiff adequately pleads that Defendant is a creditor or bailee.

The TCCWNA does not define the terms "creditor" or "bailee." *Boyko v. Am. Int'l Grp., Inc.*, No. 08-2214, 2009 WL 5194431, at *5 (D.N.J. Dec. 23, 2009). Thus, the Court interprets these words according to their plain and ordinary meanings. *Id.* "Creditor" is defined as "[o]ne to whom a debt is owed; one who gives credit for money or goods." *Creditor*, Black's Law Dictionary (10th ed. 2014). "Bailee" is defined as "[s]omeone who receives personal property from another, and has possession of but not title to the property." *Bailee*, Black's Law Dictionary (10th ed. 2014).

In this case, Plaintiff pleads in a conclusory manner that Defendant is a creditor, and alternatively, a bailee, while providing no underlying support for these alleged facts. These conclusory statements are not afforded the presumption of truth that pleadings in a complaint typically receive in a motion to dismiss. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Restatements of the elements of a claim are legal conclusions, and therefore, not

14

entitled to a presumption of truth."). Moreover, Plaintiff contradictorily claims that Defendant is also a debt collector and that the amount due is allegedly owed to a creditor other than Defendant.[4] As pled, Plaintiff's allegations support the theory that Defendant acted as a debt collector, and not a creditor or a bailee. Defendant sought to collect an unpaid toll from Plaintiff. Defendant did not "sell, lease, lend or bail any money or property to Plaintiff" as required by the TCCWNA. *Boyko*, 2009 WL 5194431, at *5; *see also Ogbin v. GE Money Bank*, No. 10-5651, 2011 WL 2436651, at *4 (D.N.J. June 13, 2011). Therefore, Plaintiff does not state a claim under the TCCWNA.

### IV.  CONCLUSION

For the reasons set forth above, Defendant's motion is granted. Counts One, Two, and Three are dismissed without prejudice. As this is the first time the Court has dismissed Plaintiff's FAC, the Court will permit Plaintiff to file an amended complaint within thirty days of this Opinion.[5] The Court is aware that in light of the legal conclusions made herein, a credible argument can be made that any amendment would be futile. Yet, since this is the first time the

---

[4] If Defendant was creditor, as opposed to a debt collector, then Plaintiff's FDCPA claim would not be plausibly pled. *See Pollice*, 225 F.3d at 403 ("The FDCPA's provisions generally apply only to 'debt collectors.' Creditors -- as opposed to 'debt collectors' -- generally are not subject to the FDCPA." (internal citation omitted)).

[5] If Plaintiff files an amended complaint it shall comport with Local Civil Rule 15.1, which effective May 10, 2017, states that:

> a party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:
> (1) a copy of the amended pleading, complete with a handwritten or electronic signature;
> and
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.

15

Court has addressed a motion to dismiss in this case, the Court will nevertheless grant Plaintiff an opportunity to amend. The Court does not know if Plaintiff believes that he has other pertinent facts and/or viable legal theories that would support an amended pleading. If Plaintiff does not file an amended complaint within thirty days, this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: July 14, 2017

                                             John Michael Vazquez, U.S.D.J.