UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ARON ROSENZWEIG, individually and on behalf of all others similarly situated,

  Plaintiff,

v.

TRANSWORLD SYSTEMS INC.,

  Defendant.

Civil Action No. 16-227 (JMV)(MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Defendant Transworld Systems Inc.'s ("Defendant" or "TSI") motion to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. D.E. 42. The Court previously dismissed the First Amended Complaint but permitted Plaintiff to file another amended complaint. D.E. 38, 39. Plaintiff brings a class action against TSI alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA"). The Court reviewed all submissions made in support and in opposition to the motion, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b).[1]  For the reasons that follow, Defendant's motion is **GRANTED**.

---

[1] Memorandum in Support of Transworld Systems Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint, D.E. 42, hereinafter "Defendant's Brief" or "Def. Br."; Plaintiff's Opposition to Defendant's Motion to Dismiss, D.E. 48, hereinafter "Opposition" or "Opp."; Reply in Support of Transworld Systems Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint, D.E. 49, hereinafter "Defendant's Reply" or "Reply."

## I. Factual Background & Procedural History

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC"), D.E. 44, and certain attachments thereto, which are assumed as true for purposes of the current motion. Plaintiff uses an E-ZPass transponder that allows him to pay tolls without having to stop at toll plazas. SAC at ¶¶7-8. E-ZPass allows customers to continue using the transponder even when their accounts have a negative balance.[2] *Id.* at ¶12. Plaintiff alleges that the transponder was not properly scanned a number of times while he passed through a toll plaza, which resulted in "orphan transactions." *Id.* at ¶13. The E-ZPass Individual Agreement Terms and Conditions (the "Agreement") defines "orphan transaction" as an instance in which a transponder is not read "due to equipment failure or user misuse[.]" Ex. A to SAC. However, the Agreement only refers to orphan transactions as occurring on the "New Jersey Turnpike[.]" *Id.* The SAC does not allege that Plaintiff's incident occurred on the Turnpike. The amount the user is charged for an orphan transaction is calculated according to the vehicle's class and certain prescribed "rules[.]" *Id.*

Plaintiff alleges that "[o]n a date better known to Defendant," he drove through a toll plaza but the toll was not paid. SAC at ¶16. Afterward, Defendant sent Plaintiff a collection letter, requesting a total of $55.00: $5.00 for the unpaid toll and $50.00 for an administrative fee. *Id.* at ¶17, Ex. C to SAC. The collection letter did not specify the date of the violation. SAC at ¶21, Ex. C to SAC. Defendant's collection letter indicated Plaintiff's "Current Balance Due" as $55.00, and further stated that "[y]our account balance may be periodically increased due to the addition of accrued interest or other changes as provided in the agreement with the original creditor or as

---

[2] The E-ZPass agreement does not permit a customer to carry a negative balance, instead it requires a customer to "pay with cash in a cash lane" when the customer has an "insufficient balance[.]" Ex. A to SAC. Plaintiff's attorney, however, indicates that he contacted E-ZPass, and they indicated that they *do* permit customers to use their transponders even when they have an inadequate balance. Ex. B to SAC.

2

otherwise provided for state law." SAC at ¶¶ 27, 28, Ex. C to SAC. Plaintiff claims these two statements are "false, deceptive, and misleading." SAC at ¶29.

Plaintiff filed his initial Complaint on January 13, 2016. D.E. 1. TSI filed its Answer on March 14, 2016. D.E. 7. Plaintiff then filed a motion to amend/correct the Complaint, which Defendant opposed. D.E. 18, 20. Judge Falk granted the motion on September 20, 2016. D.E. 27, 28. Plaintiff filed his First Amended Complaint on September 20, 2016. D.E. 29. Defendant filed a motion to dismiss, which was granted on July 14, 2017. D.E. 30, 38, 39. Plaintiff filed a Second Amended Complaint on August 11, 2017. D.E. 40, 44.[3] Defendant has now filed a motion to dismiss the Second Amended Complaint, D.E. 42, which Plaintiff opposed. D.E. 48. Defendant replied on September 25, 2017. DE. 49. The First Amended Complaint alleged violations of three different statutes. The SAC contains only one count, which alleges a violation of the FDCPA.

## II. Standard of Review

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when it fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss under Rule 12(b)(6) the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.2002). In addition to the complaint, the court may also consider any exhibits attached thereto. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)

---

[3] Plaintiff initially filed the Second Amended Complaint on August 11, 2017, D.E. 40. The Court ordered Plaintiff to re-file it in accordance with Local Rule 15.1, D.E. 43, which Plaintiff did on August 25, 2017. D.E. 44. D.E. 44 is the operative pleading.

3

(noting that when deciding a motion to dismiss, courts generally consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While not a "probability requirement," plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). Additionally, a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### III. Analysis

The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013). To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d

Cir. 2006)). "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). On this motion, only the third element is at issue. Specifically, Defendant moves to dismiss the SAC on the basis that the delinquent toll and the subsequent violation fee are not "debts" under the FDCPA. Def. Br. at 4.

The FDCPA defines a "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. 1692a(5). A "debt" arises out of a "consensual consumer transaction[ ] . . . whose subject is primarily for personal, family, or household purposes." *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 401 (3d Cir. 2000) (holding that obligations to pay water and sewer utilities are "debts" under the FDCPA). By contrast, property taxes are not debts under the FDCPA because they "are not obligations arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* at 401-02 (internal quotation marks omitted).

5

The Court discussed Plaintiff's allegations with regard to the FDCPA in great detail in its July 14, 2017 Opinion, and ultimately dismissed the FDCPA claim because it determined the delinquent toll and fee are not "debts." D.E. 38. The analysis in that Opinion relied heavily on a case out of this District, *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, which held that an obligation arising from non-payment of a toll does not constitute a debt under the FDCPA. 2017 WL 1102635 (D.N.J. Mar. 24, 2017).[4] The Court also found that Plaintiff failed to plausibly plead a cause of action because he failed to "plead the essential terms" of his contract with E-ZPass, or attach the contract itself to the First Amended Complaint. D.E. 38 at 10. Instead, for example, Plaintiff attached a document he believed to be his contract with E-ZPass to his opposition to Defendant's first motion to dismiss. *Id.*, Ex. 1 to D.E. 33.

Defendant argues that Plaintiff has failed to address the deficiencies noted in the July 14, 2017 Opinion. Def. Br. at 4. Specifically, Defendant argues that given the decision in *St. Pierre*, and this Court's decision to dismiss the First Amended Complaint, Defendant cannot continue to argue that the amount due to E-ZPass is a "debt." *Id.* at 4-10. Defendant further argues that while Plaintiff has now attached the purported contract with E-ZPass to the SAC, the allegations in the SAC directly contradict the clear terms of the contract language. *Id.* at 9-10. Defendants also point out that Plaintiff's attorney's declaration about a conversation the attorney had with an E-ZPass representative cannot vary the terms of the contract Plaintiff attached to the SAC. *Id.* at 9 & n.2.

Plaintiff responds that this Court should follow the precedent set by other District Courts which have held that similar toll charges are "debts" under the FDCPA. Opp. at 9. He further

---

[4] The appeal of *St. Pierre* is still pending with the Third Circuit, which held oral argument on January 23, 2018. USCA Case No. 17-1941. The parties do not cite to, nor did the Court find any subsequent cases in this District dealing with the same or similar fact pattern.

argues that because the court in *St. Pierre* did not apply the *pro tanto* test as required by the Third Circuit to determine whether a debt is covered by the FDCPA, this Court should not follow its holding. *Id.* at 10. Plaintiff lastly argues that *St. Pierre*'s holding conflicts with other Third Circuit precedent. *Id.* at 13.

In sum, the Court finds that Plaintiff has failed to remedy the deficiencies the Court addressed in its July 14, 2017 Opinion. D.E. 38. Plaintiff, in essence, repeats the same legal arguments with which this Court has already disagreed. The Court fully addressed the two cases out of other District Courts that Plaintiff cites: *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809 (E.D. Va. 2015); and *Yunker v. AllianceOne Receivables Management.*, 2011 U.S. Dist. LEXIS 159445 (S.D. Fla. Jul. 19, 2011). *Id.* at 6-7. After considering each, the Court discussed *St. Pierre*—a case from this District—in detail, and noted that Judge Wolfson did address the *pro tanto* analysis Plaintiff argues applies. As this Court explained:

> Judge Wolfson [in *St. Pierre*] emphasized that "[u]nlike a traditional consumer relationship, but like revenue generated by taxes, revenue generated from tolls is used for the benefit of the public at large, including the construction, maintenance and improvement of the roads." Therefore, the court held that the requirement "to pay tolls does not arise from a transaction that is 'primarily for personal, family, or household purposes'" and is not a debt.

D.E. 38 at 8-9, (discussing *St. Pierre*, 2017 WL 1102635, at *8) (internal citations omitted). Judge Wolfson also addressed both *Brown* and *Yunker* in her analysis in *St. Pierre*. *St. Pierre*, 2017 WL 1102635, at *9. This Court ultimately agreed with Judge Wolfson's analysis in *St. Pierre*, and dismissed the FDCPA claim.

Plaintiff also now attaches the E-ZPass Individual Agreement Terms and Conditions as Exhibit A to the SAC. As the Court noted in its original Opinion, and as reflected in note 2 *supra*, the Terms and Conditions directly contradict Plaintiff's allegation that the E-ZPass contract

7

extended him a line of credit. Plaintiff's attorney nevertheless states in his declaration, Ex. B to SAC, that he "called MTA Bridges and Tunnels E-ZPass [] regarding the policies and procedures," and during that call a representative from E-ZPass told him that "although it is not written in the contract, it is E-ZPass's policy to extend credit to consumers." Ex. B. to SAC at ¶2. The written document, however, controls. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.") Moreover, even if the Court were to credit the declaration (which would essentially mean that Plaintiff's attorney is acting as a fact witness in a case that he is litigating), it does not indicate that E-ZPass extended credit to users during the time alleged in the SAC. The collection letter was sent on June 29, 2015, meaning that Plaintiff's alleged violation had to occur before that date.[5]

Regardless of the contract between Plaintiff and E-ZPass, Plaintiff has failed to show that the delinquent toll and the administrative fee are "debts" under the FDCPA—instead he has rehashed arguments he made in opposition to the first motion to dismiss. For the reasons stated in the Court's July 14, 2017 Opinion, D.E. 38, the Court disagrees with Plaintiff's arguments. Thus, the Court has no legal basis to deny this second motion to dismiss.

### IV. Conclusion

For the reasons set forth above, Defendant's motion is granted. The Court noted in its initial Opinion that "in light of the legal conclusions made herein, a credible argument can be

---

[5] Of note, the document Plaintiff now claims is his agreement with E-ZPass, Ex. A to the SAC, is the same document that he previously supplied in the prior motion to dismiss, D.E. 33-1. However, Plaintiff earlier claimed that he merely "believed" that it was the agreement and that discovery was needed to determine whether a contract actually existed between Plaintiff and E-ZPass. D.E. 33 at 5, 6. Plaintiff has not provided the Court with any information as to how he is now certain of the agreement.

made that any amendment would be futile." D.E. 38 at 15. Because Plaintiff has not cured any of the earlier deficiencies, the Court is now reasonably certain that any future amendment would be futile. Thus, the Second Amended Complaint is dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: April 26, 2018

_____
John Michael Vazquez, U.S.D.J.